No. 00-145

IN THE SUPREME COURT OF THE STATE OF MONTANA
2001 MT 103N

---

IN RE THE MARRIAGE OF:

SANDRA S. CARTER,

Petitioner and Appellant,

and

DEAN W. CARTER,

Respondent.

---

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robyn L. Weber, Weber Law Firm, Helena, Montana

For Respondent:

Phillip N. Carter, Attorney at Law, Sidney, Montana

Submitted on Briefs: January 11, 2001

Decided: June 19, 2001

Filed:

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1  Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be

reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2  On October 15, 1997, the Petitioner, Sandra Carter filed a petition for dissolution of her marriage to the Respondent Dean Carter in the District Court for the First Judicial District in Lewis and Clark County. Following trial, the District Court entered its Findings of Fact and Conclusions of Law and Judgment on July 15, 1999, dissolving the parties marriage and distributing the marital estate. Subsequently, Dean filed a motion to vacate or amend the judgment as it related to the distribution of his 401(k) plan. That motion was granted and an amended judgment was entered on August 31, 2001. Sandra appeals from the District Court's amended judgment.

¶3  The sole issue on appeal is whether the District Court equitably distributed the marital estate?

## FACTUAL BACKGROUND

¶4  Sandra and Dean Carter were married on March 10, 1990. Sandra was 56 years of age and employed as an Accounting Technician with Blue Cross/Blue Shield in Helena at the time of trial. Dean was 58 years old and had been employed by ASARCO in East Helena for more than 20 years.

¶5  After their marriage, the couple purchased a house on Little Blackfoot Road near Elliston, Montana. Sandra made a down payment of $29,607 and Dean contributed $20,392. They sold the home in March, 1996. By then, their equity in the house had grown to $99,000.

¶6  After the sale of their first home, the parties purchased a home in the Helena Valley, located on Spokane Creek Road. From the $99,000 equity from the first home, they made a down payment of $87,000. They lived in this house until their separation in 1997.

¶7  Sandra moved out of the marital home when she and Dean separated but she continued to make mortgage payments. Dean lived in the home until the sale of the

house in March, 1998. In order to prepare the home for resale, the parties borrowed money from Tri-Valley Credit Union with which they remodeled a bathroom in the house. The parties put the money earned from the sale of the house into an escrow account until the final dissolution of the marriage.

¶8  In addition to his employment at ASARCO, Dean owned an interest in a corporation, Havre Operations. Havre Operations owns a bowling alley which has not been profitable. Although the corporation existed before Sandra and Dean married, Sandra signed various documents relating to the company debt, including a pledge of the couple's house as collateral. When Dean and Sandra sold their second house, the bank to whom the company debt was owed required that they pay $62,000 from their equity to satisfy the loan.

¶9  Dean was also involved in the cattle market while married to Sandra. He borrowed money from the First Security Bank of Havre in order to finance the cattle operation. Dean operated the business himself and made all key decisions. After cattle market losses, the bank obtained a $31,574.31 judgment against Dean.

¶10  In addition to the real property owned by the parties, both Sandra and Dean own retirement and 401(k) accounts from their employment. Since funding of Dean's account began at about the time of the couple's marriage, the Court determined in its original judgment that it should be split equally between the parties.

¶11  In order to distribute the Spokane Creek house equity, the District Court took the amount that both parties contributed to the first house and then added their equity. After that, the District Court subtracted the loan owed by both of them for the remodeling of the bathroom. Ultimately, the District Court found that Sandra should receive $47,956.74 and Dean should receive $36,925.86.

¶12  The District Court also determined that Dean should bear the burden of the debts accumulated from his involvement in Havre Operations and the cattle market during the marriage. In order to distribute the equity, the District Court allocated the remainder of the escrow account to Sandra. That amount was $20,627. The District Court originally ordered that the remainder of her share should come from "Dean's interest in his ASARCO 401K plan." The original judgment specified that "Sandy

should receive the sum of $27,329.74 from Dean Carter's 50 percent interest in his ASARCO 401(k) plan of the balance existing of July 15, 1999." Dean moved the Court to amend or vacate the judgment claiming that the judgment misinterpreted the language of the Findings of Fact and Conclusions of Law. Thereafter, the District Court amended its judgment and provided that Sandra should receive $27,329.74 from the 401(k) plan before its division and then the balance should be divided equally. In other words, the amount of Dean's 401(k) plan distributed to Sandra was reduced. This is the sole basis of Sandra's appeal.

## DISCUSSION

¶13  Did the District Court err when it distributed the marital estate?

¶14  We review a district court's distribution of marital property for an abuse of discretion. *In re Marriage of Foreman*, 1999 MT 89, ¶ 14, 294 Mont. 181, ¶ 14, 979 P.2d 193, ¶ 14. A court has broad discretion to equitably distribute property pursuant to §40-4-202, MCA. Section 40-4-202, MCA, provides that:

In a proceeding for dissolution of a marriage, legal separation, or division of property following a decree of dissolution of marriage or legal separation by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to divide the property, the court, without regard to marital misconduct, shall, and in a proceeding for legal separation may, finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both.

§40-4-202(1), MCA.

¶15  Sandra contends that the original judgment more fairly distributed the couple's property. Sandra contends that the proper way to distribute the 401(k) account is to

divide the account in half, first, and then take the $27,329.74 from Dean's 50% share of the account. She argues that otherwise, the money will be taken in part from her share and therefore, she will still end up paying the debts incurred by Dean. Dean argued, and the District Court agreed, that the money should be paid first and then the account divided because otherwise, Dean would be left without any money. Since the money that paid the debt came from their combined account, the money given back to Sandra should also come from their combined account.

¶16  In the Amended Judgment, the District Court explained that the first judgment signed by the Court varied in significant ways from the Findings of Fact entered earlier by the Court and that "it feels that this Judgment more accurately reflects the Findings of Fact entered by the Court on July 19, 1999."

¶17  The record reflects that Sandy received all the cash available to both parties and that Dean received all the debt. In order to equalize the division of property, the District Court awarded the majority of personal property to Dean. However, he is also obligated to satisfy the debt.

¶18  We are satisfied that the District Court fully evaluated the claims of each party and distributed the property in a manner equitable to both. The District Court stated in its denial of Sandra's motion to set aside the judgment that it reviewed its orders and found no reason to change them. According to the District Court, "Sandra received the best of a bad situation. She has been restored to as much money as the Court could, in equity and good conscious, award to her. A crushing amount of debt has been thrown upon Dean, who leaves this marriage, as opposed to Sandra, with no cash. Sandra not only has $48,000 in cash, but also one-half of Dean's 401K plan."

¶19  We conclude that the District Court did not abuse its discretion when it distributed the couple's marital estate. Therefore, we affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

No

We Concur:


/S/ KARLA M. GRAY


/S/ W. WILLIAM LEAPHART


/S/ PATRICIA COTTER


/S/ JIM REGNIER